# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30258

United States Court of Appeals
Fifth Circuit

**FILED**

January 25, 2017

Lyle W. Cayce
Clerk

CLAIMANT ID 100250022,

Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, HIGGINBOTHAM and PRADO, Circuit Judges.

PER CURIAM:

Alabama Coastal Radiology, P.C. ("ACR"), filed a claim under the Business Economic Loss ("BEL") Framework of the Deepwater Horizon Economic Loss and Property Damage Settlement Agreement. The Court Supervised Settlement Program ("CSSP") denied the claim, and an Appeal Panel affirmed the CSSP's denial. ACR requested that the district court grant review of the CSSP's decision, but ACR's request was denied. ACR now appeals the district court's denial of discretionary review. We AFFIRM.

## I.

This case relates to the Deepwater Horizon Economic Loss and Property Damage Settlement Agreement ("Settlement Agreement"), which was reached

in the wake of the 2010 Deepwater Horizon oil spill incident.[1]  As a result of its obligations under the Settlement Agreement, BP has distributed millions of dollars in damages to affected entities.  *In re Deepwater Horizon*, 910 F. Supp. 2d 891, 903-04 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014).

ACR attempted to obtain compensation as a Multi-Facility Business under the BEL Framework of the Settlement Agreement.  ACR is a group of sixteen radiologists.  Infirmary Health Services ("IHS"), a separate entity from ACR, owns several hospitals where ACR provides radiology services.  In each hospital, the ACR radiologists interpret imaging scans taken by the hospital; the scans are reviewed in a designated location referred to as a "reading room." According to ACR's certified public accountant, ACR does not have a physical office and outsources all of its administrative tasks.  IHS contracted with ACR to provide the radiology services; IHS owns the "reading room" space and all of the equipment ACR uses to carry out its imaging scan review services.

ACR submitted a BEL claim under the Multi-Facility Business Framework for a reading room located inside Infirmary 65, a hospital situated in Mobile, Alabama.   The Settlement Agreement allows for business claims that "include separate specialized frameworks addressing Business Economic Loss Claims by **MULTI-FACILITY BUSINESSES**."   Exhibit 5 of the Agreement defines "multi-facility business" as "[a] business entity that, during the period April 1, 2010 through December 31, 2010, maintained **Facilities** in more than one location and had at least one **Facility** within the Gulf Coast Areas."  A "Facility" is then defined as "[a] separate and distinct physical location of a **Multi-Facility Business** at which it performs or manages its operations."  Policy 467, enacted by the CSSP, expands upon the definition of

---

[1] *See In re Deepwater Horizon*, 910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014) (describing the oil spill and development of the Settlement Agreement).

"Facility" and provides that an entity must satisfy three elements to be classified as a "Facility" under the Agreement: It must be (1) "[a] separate and distinct physical structure or premises"; (2) "[o]wned, leased or operated by the Business Entity"; and (3) "[a]t which the Business Entity performs and/or manages its operations." Under the "Overall Criterion" section of Policy 467, the CSSP explains that "[a]n Entity does not 'perform' or 'manage' operations at a location unless it can identify the expenses and revenues, if any, associated with the operations at that location separately from the expenses and revenues of other locations owned, leased or operated by the Entity."

The CSSP denied ACR's claim. It explained in its denial notice that ACR had failed to meet all three elements of the definition of "Facility." ACR then requested a denial summary from the CSSP for additional explanation. It received the following summary:

> [ACR] only has a contract to provide radiology services at the facilities. The Claimant's Attorney also explained that the Claimant does not have an office space at the facilities for which they pay rent or lease expenses. . . . According to Policy 467, this Claimant does not have the option of filing a separate claim for operations performed at one of the hospitals. The claim should be closed, as the Claimant has filed a separate claim for a location that is not a facility.

ACR requested re-review of the denial after submitting a statement from its CPA and photographs of the reading room. The CSSP denied the claim again after re-review, and again after ACR requested reconsideration of the post-re-review denial notice. ACR appealed to an Appeal Panel. The Appeal Panel affirmed the denial of ACR's claim, explaining that "Claimant does not pay rent or lease expenses on the reading room . . . [and] [t]here is not evidence that Claimant pays for janitorial services, electricity, or other items a tenant normally has." The Panel also announced that its decision "[would] stand as the Settlement Program's final determination on this claim."

3

Pursuant to the procedure for appeals to federal court arising out of the application of the Settlement Agreement, ACR appealed to Judge Barbier of the Eastern District of Louisiana. *See In re Deepwater Horizon*, 785 F.3d 1003, 1007 (5th Cir. 2015) ("A party may then appeal the Appeal Panel's determination to the district court of Judge Barbier in the Eastern District of Louisiana, which has discretion to hear such appeals."). The district court denied discretionary review of the decision by the Appeal Panel. ACR timely appealed.

## II.

The standard of review that we apply to the district court's denial of discretionary review is abuse of discretion. *Holmes Motors, Inc. v. BP Exploration & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016) (citing *In re Deepwater Horizon*, 785 F.3d at 1011). Our unpublished decisions addressing actions pursuant to the Settlement Agreement have expounded upon our abuse of discretion inquiry, "ask[ing] 'whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement.'" *Id.* (citing series of cases). In the event that we find a contradiction or misapplication of the Settlement Agreement, we will agree that the district court abused its discretion. *Id.*

## III.

ACR argues that the Infirmary 65 reading room constitutes a "Facility" of ACR because ACR has a contract with IHS to use the location as a "separate and distinct office space under ACR's exclusive use and control." BP counters that the reading room is a "Facility" of IHS, and thus that it cannot also be a "Facility" of ACR. The focus of the Settlement Agreement BEL Framework, BP explains, is upon remedying actual economic loss caused by the oil spill. Further, BP argues that the costs of maintaining the equipment and reading

room space are those of IHS, not ACR. Thus, BP contends, "Infirmary 65 is an IHS 'facility.'"

In reaching our decision that the district court did not abuse its discretion in denying discretionary review of the Appeal Panel decision in the instant case, we need not examine whether the CSSP was actually correct in refusing to classify Infirmary 65's reading room as a "Facility" of ACR. Rather, we look to whether the Appeal Panel decision contradicts or misapplies the Settlement Agreement, and we find that it does not. The Appeal Panel explains in its decision that not only does ACR "not pay rent or lease expenses on the reading room," there is also "no evidence that [ACR] pays for janitorial services, electricity, or other items" that normally accompany a lease-like relationship. The Appeal Panel further observed that the "only service provided" in the reading room "is the contracted for radiology service." It concluded that the provision of the radiology service is not sufficient to meet the three-part definition of a "Facility."

The Appeal Panel's conclusion hardly contradicts or misapplies the Settlement Agreement. The Agreement's Multi-Facility Business Framework functions as a subpart of the larger BEL Framework, which operates to compensate for business economic losses. Furthermore, the definition of "Facility" as it is found in Policy 467 contains language with which the Appeal Panel's decision is consistent. In particular, the "Overall Criterion" provision explains that a business must be able to identify the "expenses and revenues, if any, associated with the operations at that location" in order to establish that it "performs" or "manages" operations there. ACR argues that the "if any" language contemplates situations in which a location may constitute a "Facility" within the meaning of the Agreement notwithstanding a lack of rental and lease expenses associated with the location.

Even if we were to agree with ACR's interpretation of the "Overall Criterion" provision and Policy 467 as a whole, the CSSP's finding is not incongruent with the language of the Settlement Agreement and the Multi-Facility Business Framework's function within the BEL Framework. Thus, the CSSP and the Appeal Panel did not contradict or misapply the Settlement Agreement.

## IV.

In sum, because the district court's denial of discretionary review does not result in a contradiction or misapplication of the Settlement Agreement, we hold that it is not an abuse of discretion and AFFIRM.