## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30842

United States Court of Appeals
Fifth Circuit

**FILED**

April 27, 2017

Lyle W. Cayce
Clerk

CLAIMANT ID 100001528,

      Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

      Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-8487

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:*

      This case concerns the Economic & Property Damages Settlement Agreement ("E&PD Settlement Agreement" or "Settlement Agreement"), which was created to resolve civil disputes related to the 2010 *Deepwater Horizon* incident. Coast fisherman Jarrette Prout appeals the district court's denial of discretionary review of an Appeals Panel decision refusing to honor his subsistence claim. The Settlement Program Appeals Panel based its

---

      * Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

decision on a finding that Prout was an employee of DRC Marine, which was a defendant in multidistrict litigation ("MDL") 2179 and therefore it and its employees were excluded from eligibility for awards under the Settlement Program. For the following reasons, we AFFIRM.

I.

The failure of the MC252 WELL and the explosion of the *Deepwater Horizon* oil rig in April 2010 triggered a massive oil spill that in turn spurred a widespread Settlement Agreement between BP and those entities adversely and directly affected by the spill. *See In re Deepwater Horizon*, 732 F.3d 326, 329 (5th Cir. 2013). The Settlement Agreement structure provides for a Court-Supervised Settlement Program ("CSSP"), which resolves disputed claims arising from the Agreement. Under the CSSP, denials of awards by Claims Administrators may be appealed to Appeals Panels. The District Court for the Eastern District of Louisiana has jurisdiction over the Agreement to review appeals from Settlement claims disputes.[1]

The portion of the Agreement that is most relevant to this case is Section 2.2.2, which excludes

> Defendants in MDL 2179, and individuals who are current employees, or who were employees during the CLASS PERIOD, of BP or other defendants in MDL 2179.

In turn, Section 38.91 of the Agreement defines "MDL 2179" as "the federal multidistrict litigation titled *In re Oil Spill by the Oil Rig 'Deepwater Horizon' in the Gulf of Mexico on April 20, 2010* (MDL No. 2179)." Further, "Class

---

[1] At present, this court has reviewed at least nine cases relating to the CSSP. *See In re Deepwater Horizon*, 641 F. App'x 405, 406 n.1 (5th Cir. 2016) (citing *In re Deepwater Horizon*, 814 F.3d 748 (5th Cir. 2016); *In re Deepwater Horizon*, 632 F. App'x 199 (5th Cir. 2015); *In re Deepwater Horizon*, 793 F.3d 479 (5th Cir. 2015); *In re Deepwater Horizon*, 785 F.3d 1003 (5th Cir. 2015); *In re Deepwater Horizon*, 785 F.3d 986 (5th Cir. 2015); *In re Deepwater Horizon*, 616 F. App'x 699 (5th Cir. 2015); *In re Deepwater Horizon*, 744 F.3d 370 (5th Cir. 2014); *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013)).

Period" is identified in Section 38.28 as the period between April 20, 2010 and "the date of the filing of the Action, which is April 16, 2012."

Prout submitted a Subsistence claim[2] to receive compensation for the loss of the seafood catch that he and his family were not able to consume during the aftermath of the oil spill. Prout received multiple Section 2.2.2 denials by the CSSP, denials that were based on his time working for DRC Marine. The CSSP identified DRC Marine as an MDL 2179 Defendant, thereby rendering it ineligible for settlement awards. Prout appealed his Post-Reconsideration Denial to an Appeals Panel, which affirmed the denial of Prout's subsistence claim "with some hesitation." In doing so, the Appeals Panelist noted the "common sense" approach of other panel decisions that have concluded, "[O]nly employees of those entities allegedly 'responsible for the Spill' should be excluded." Because of the "striking factual similarities" between Prout's case and another case that was recently reversed by the district court upon discretionary review,[3] however, the Appeals Panelist "accede[d] to the prior ruling of the District Court" and denied Prout's claim.

---

[2] The E&PD Settlement Agreement defines "Subsistence Claimant" as follows:

(i) a Natural Person who satisfies the Class Definition,

(ii) who fishes or hunts to harvest, catch, barter, consume or trade Gulf of Mexico natural resources (including **Seafood** and **Game**), in a traditional or customary manner, to sustain his or her basic personal or family dietary, economic security, shelter, tool, or clothing needs, and

(iii) who relied upon subsistence resources that were diminished or restricted in the geographic region used by the claimant due to or resulting from the DWH Spill.

[3] The district court's unpublished decision is included in the Record on Appeal. Like the instant case, in the previous decision, the district court addressed the claim of an individual who "[d]uring the oil spill . . . was briefly an employee of DRC Marine doing clean-up work." The court found that, because DRC Marine was listed on the Settlement Program website as a defendant in MDL 2179, the individual's claim was properly excluded under Section 2.2.2.

Prout then sought discretionary review by district court. The court denied discretionary review, and Prout timely appealed.

## II.

We apply an abuse of discretion standard of review to the district court's denial of discretionary review under the Settlement Agreement. *Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167, 169 (5th Cir. 2017) (citing *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016)). In previous decisions concerning the Settlement Agreement, both published and unpublished, we have asked "whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement." *Id.*; *see also Holmes Motors*, 829 F.3d at 315. We will find that an abuse of discretion occurred should either of these two situations be present.

## III.

Prout challenges the district court's denial of discretionary review of the CSSP decision, which, Prout contends, incorrectly characterized DRC Marine as a defendant in MDL 2179 and Prout as an employee of DRC Marine.

We first address the CSSP's finding that Section 2.2.2's exclusion of "other defendants in MDL 2179" from settlement awards applies to DRC Marine. DRC Marine is listed in some—but not all—references of defendants in MDL 2179. Neither the "B1" Master Complaint for Economic and Property Damages nor the "B3" Master Complaint for Exposure Injury Medical Claims lists DRC Marine as an MDL 2179 defendant. The record in MDL 2179 reflects that DRC Marine was, however, listed as a defendant in as many as three

lawsuits[4] in MDL 2179 and is also listed on the Settlement Program's website as a defendant in MDL 2179.

Prout argues that the three MDL 2179 cases in which DRC Marine was named a defendant were unrelated to the cause of the oil spill or the economic damage that ensued. The proper MDL 2179 defendants, Prout contends, are those alleged to have been responsible for the spill and contamination, including those defendants listed in the B1 and B3 Master Complaints. Prout also takes aim at the list of MDL 2179 defendants that includes DRC Marine on the Settlement Program's website. He observes that the creator of the website list is not apparent and argues that the list should not be referenced to determine whether DRC Marine was a defendant in MDL 2179.

Nevertheless, the plain language of Section 2.2.2 excludes "other defendants in MDL 2179." It does not explicitly limit the definition of "defendants" to those defendants allegedly responsible for the oil spill and its ensuing damage. Accordingly, the CSSP decision excluding DRC Marine as a defendant in MDL 2179 was consistent with the plain language of Section 2.2.2 and did not contradict or misapply the Settlement Agreement.

Because we hold that the exclusion of DRC Marine under Section 2.2.2 from settlement awards was not a contradiction or misapplication of the Settlement Agreement, we next consider whether the CSSP's decision calling Prout an employee of DRC Marine resulted in a contradiction or misapplication of the Settlement Agreement. Following the oil spill, Prout worked as a deckhand on a vessel captained by Ronny Andrew to assist with the cleanup efforts under the Vessels of Opportunity ("VoO") Program.[5] Prout

---

[4] *Daigle v. DRC Emergency Servs., LLC*, No. 2:11-cv-02499 (E.D. La. July 12, 2012); *Gros v. DRC Emergency Servs.*, No. 2:11-cv-01824 (E.D. La. Oct. 29, 2012); *Fitzgerald v. BP Expl. & Prod.*, No. 2:11-cv-00650 (E.D. La.) (filed in 2013).

[5] The Vessels of Opportunity ("VoO") Program was created to power the cleanup efforts and is defined in the Agreement as "the program through which BP, or its contractors,

characterizes himself as "a lifelong commercial fisherman who shrimped before the BP Oil Spill and continues to occasionally shrimp with his family after he worked VoO." Notwithstanding his receipt of a W-2 from DRC Marine for his work, Prout argues that he was not an employee. Rather, he contends that because DRC Marine did not control Prout's activities as a deckhand working aboard Captain Andrew's vessel, Prout's mere receipt of a W-2 should not form the basis for finding an employer-employee relationship. On Prout's Seafood Compensation Program claim form, however, he cited his W-2 in response to a question requesting "proof to establish that [he was] present and available to work for [his] employer as frequently as required" during the cleanup period. Thus, Prout's receipt of a W-2 for his work supports the CSSP's finding that he was an employee during the relevant period.

Ultimately, however, we need not address the question of the extent to which a W-2 may illustrate an employer-employee relationship, because we find that the CSSP's classification of Prout as an employee of DRC Marine during the cleanup efforts was not error and did not contradict or misapply the Settlement Agreement. *See In re Deepwater Horizon*, 641 F. App'x 405, 410 (5th Cir. 2016) ("If the discretionary nature of the district court's review is to have any meaning, the court must be able to avoid appeals like this one which involve no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise the correctness of a discretionary administrative decision in the facts of a single claimant's case.").

## IV.

In sum, because the district court's denial of discretionary review did not concern a CSSP decision that contradicted or misapplied the Settlement

---

contracted with vessel owners to assist in Deepwater Horizon Incident response efforts." Many fishermen, including Prout's captain, supplied their fishing vessels to assist with the VoO Program.

Agreement, we hold that the district court did not abuse its discretion and AFFIRM.