# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2018

Lyle W. Cayce
Clerk

No. 17-30313

consolidated with 17-30314, 17-30315, 17-30317, 17-30318, 17-30320, 17-30321, 17-30323, 17-30324, 17-30325, 17-30326, 17-30327, 17-30328, 17-30329, 17-30331, 17-30332, 17-30334, 17-30335, 17-30336

CLAIMANT ID 100271726,

> Requesting Party – Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

> Objecting Parties – Appellees.

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-976

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

In these consolidated cases, PowerSouth Energy Cooperative ("PowerSouth") challenges the district court's refusal to review a series of Administrative Appeal Panel decisions pertaining to the proper application of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the *Deepwater Horizon* Economic and Property Damages Settlement Agreement (the "Settlement Agreement"). In each decision, the Appeal Panel found that PowerSouth was not eligible to bring a claim under the Settlement Agreement because its unmanned electrical substations did not constitute "facilities" as that term is defined in the Agreement. For the reasons stated below, we AFFIRM.

## I.     Factual and Procedural Background

"The *Deepwater Horizon* oil spill and the ensuing Settlement Agreement 'are no strangers to this court.'"[1] Therefore, we only discuss the facts necessary to resolve this appeal.

PowerSouth is an energy cooperative that generates electricity and provides that electricity wholesale to 16 retail distributors, who, in turn, deliver electricity to residential and business customers. As part of this process, PowerSouth uses its substations to "step-down" the voltage of its electricity to a safe level for residential and commercial use. The nineteen substations in question are unoccupied, fenced-in areas containing equipment necessary to complete the "step-down" process. PowerSouth does not have any employees assigned to the substations; rather, PowerSouth remotely monitors the substations from the company's headquarters. If, through this remote monitoring, PowerSouth detects a problem at a particular substation, it may dispatch an employee to the substation. However, on most occasions, PowerSouth is able to diagnose a problem and make necessary adjustments using its remote capabilities.

On January 2, 2014, PowerSouth filed twenty business economic loss claims with the *Deepwater Horizon* Court Supervised Settlement Program,

---

[1] *Claimant ID 100218776 v. BP Expl. & Prod., Inc.*, ---F. App'x---, 2017 WL 4708256, at *1 (5th Cir. Oct. 17, 2017) (quoting *Claimant ID 100128765 v. BP Expl. & Prod., Inc.*, ---F. App'x---, 2017 WL 4310087, at *1 (5th Cir. Sept. 27, 2017)).

which is directed by the Claims Administrator. The Claims Administrator has not ruled on PowerSouth's first claim, which pertains to its company headquarters. The Claims Administrator, however, denied PowerSouth's other nineteen claims that related to PowerSouth's individual substations. PowerSouth appealed those denials to nineteen Appeal Panels, which unanimously affirmed the Claims Administrator with nearly identical reasoning. Each Panel found that the substations exist solely to "step-down" the voltage of electricity and that the mere transporting of power does not transform the isolated, unoccupied substations into "facilities" as that term is defined by the Settlement Agreement. PowerSouth then filed multiple requests for discretionary review with the district court. The district court denied those requests, and PowerSouth appealed.

## II.    Jurisdiction and Standard of Review

The district court had admiralty jurisdiction over the underlying claims,[2] and we have jurisdiction over this consolidated appeal under the collateral order doctrine.[3]

We apply an abuse of discretion standard of review to the district court's denial of discretionary review of the Settlement Agreement.[4] We generally assess whether the district court abused its discretion by asking "whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement."[5]

---

[2] U.S. CONST., art. III, § 2; 28 U.S.C. § 1333; 33 U.S.C. § 2717(b); 43 U.S.C. § 1349(b); 46 U.S.C. § 30101.

[3] *In re Deepwater Horizon*, 785 F.3d 1003, 1009 (5th Cir. 2015).

[4] *Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167, 169 (5th Cir. 2017) (citing *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir 2016)).

[5] *Holmes Motors*, 829 F.3d at 315 (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 409–10 (5th Cir. 2016)).

## III. Discussion

In order to dispose of this appeal, we only address PowerSouth's argument that the district court erred in denying discretionary review because the Claims Administrator's denials contradicted the Settlement Agreement.[6] To that end, PowerSouth argues that its substations qualify as "facilities" under section 1.2.1 of the Settlement Agreement eligibility criteria and thus its claims based on those substations should not have been denied. The Settlement Agreement defines a "facility" as "[a] separate and distinct physical location of a Multi-Facility Business at which it performs or manages its operations."

PowerSouth argues that it performs or manages its operations from its substations because the substations are a necessary component of providing electricity to consumers. The substations, however, are mere conduits for the electricity that PowerSouth provides through its operations at company headquarters. As PowerSouth's CEO noted in his affidavit, "[w]hile PowerSouth periodically is required to send personnel to its substations to perform maintenance and repairs, the normal day-to-day function of PowerSouth's operations (the delivery of power to our member cooperatives) is performed using the remote monitoring and control which is carried out by PowerSouth personnel from its [company headquarters]." From the record, it is abundantly clear that PowerSouth performs and manages its operations from company headquarters—not from the isolated, unmanned substations.

---

[6] PowerSouth also argues that the Claims Administrator's passage of a "policy" that purportedly re-defined the term "facility" after PowerSouth had submitted its claims violated PowerSouth's due process rights. This argument, however, presupposes that the substations qualified as "facilities" under the original definition of that term in the Settlement Agreement. Because we find that the substations do not satisfy the original definition, we do not reach PowerSouth's due process argument.

The Claims Administrator's decisions did not contradict or misapply the Settlement Agreement, and, accordingly, the district court did not err in denying discretionary review of those decisions.

AFFIRMED.