# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-30643

United States Court of Appeals
Fifth Circuit

**FILED**
March 22, 2019

Lyle W. Cayce
Clerk

CLAIMANT ID 100022655,

      Requesting Party-Appellant,

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

      Objecting Parties-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-3557

Before GRAVES and OLDHAM, Circuit Judges.[†]

PER CURIAM:[*]

Jesse Lecompte, Claimant ID 100022655, sought compensation under the Deepwater Horizon Court Supervised Settlement Program arising from the failure of his dry dock business. The settlement administrator denied his claim. The District Court denied discretionary review. We affirm.

---

[†] This case is being decided by a quorum. *See* 28 U.S.C. § 46(d).

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30643

I.

Prior to April 2010, Lecompte operated a dry dock business in Chauvin, Louisiana. Shrimp fishermen used the dry dock to conduct repairs on their vessels. The Deepwater Horizon exploded on April 20, 2010. At some point in April 2010, Lecompte ceased operating his dry dock business.

Lecompte filed a Business Economic Loss ("BEL") claim under the Economic and Property Damages Class Action Settlement ("Settlement Agreement"). But the Claims Administrator—who resolves claims in the first instance—reclassified Lecompte's dry dock claim under the *Failed* Business Economic Loss ("FBEL") framework. The FBEL framework applies to businesses that "ceased operations and wound down" after May 1, 2010, and before December 31, 2011. *See* Settlement Agreement Ex. 6 ¶ I.

Upon review of Lecompte's evidentiary submissions, the Claims Administrator found Lecompte ceased operating his dry dock business prior to May 1, 2010. The business was thus ineligible for compensation under the FBEL framework. The Claims Administrator therefore denied Lecompte's claim and his request for reconsideration. A Settlement Program Appeals Panel affirmed.

Lecompte sought discretionary review in the district court as permitted under the Settlement Agreement, and the district court denied review. Our Court has determined we have jurisdiction to review the district court's orders regarding claim determinations under the collateral order doctrine. *See In re Deepwater Horizon*, 785 F.3d 1003, 1009 (5th Cir. 2015). We must therefore decide whether the district court abused its discretion in denying review.

II.

This is not our first opportunity to consider claims for compensation under the Settlement Agreement. We have said "[i]t is not an abuse of discretion [for the district court] to deny a request for review that 'involve[s]

no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case.'" *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (per curiam) (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 410 (5th Cir. 2016)).  But "[a] district court abuses its discretion if an Appeal Panel decision not reviewed by the district court contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement." *BP Expl. & Prod., Inc. v. Claimant ID 100094497*, 910 F.3d 797, 800 (5th Cir. 2018).

## A.

We consider first whether the Claims Administrator erred in denying Lecompte's claim under the FBEL framework.  Lecompte does not contend the Claims Administrator or Appeals Panel misinterpreted the Settlement Agreement's FBEL framework as a matter of contract law.  On this question his dispute with the Claims Administrator is purely factual.

The Claims Administrator found Lecompte ceased operating his dry dock business prior to May 1, 2010.  Lecompte appears to admit the business ceased operations in April 2010.  But he says he did not wind down his business until 2011.  In short, Lecompte thinks the Claims Administrator misinterpreted his evidence.

We do not review such factual disputes *de novo*; instead, we consider whether the Claims Administrator's factual determination was an abuse of discretion.  *See Claimant ID 100212278*, 848 F.3d at 410–11.  BP points to the Settlement Program's policy that "the Settlement Program will apply professional judgment in determining" a business's "actual failure date." Policy 506 v.2 ¶ II.B.a.  That is obviously a deferential standard.

No. 18-30643

Lecompte has not challenged Policy 506. Nor does he explain how the Claims Administrator failed to exercise "professional judgment" in determining the dry dock business failed before May 1, 2010. As BP points out—without contradiction from Lecompte—the dry dock business apparently did not file a tax return in 2010. That supports rather than undermines the Claims Administrator's judgment. The district court therefore did not abuse its discretion in declining to review the Claim Administrator's determination of the business's actual failure date. *Claimant ID 100212278*, 848 F.3d at 410.

## B.

We turn now to whether Lecompte's dry dock claim should have been considered under the general BEL framework instead of the FBEL framework.

BP defends the reclassification of Lecompte's claim (from the BEL framework to the FBEL framework). BP says Lecompte's claim was properly reclassified because the BEL framework does not apply to any business that failed prior to December 31, 2011. BP does not point to anything in the Settlement Agreement itself that dictates that result. Instead, BP again points to Policy 506. That policy says the general BEL framework does not apply to a business "that ceased operations and wound down . . . prior to December 31, 2011." Policy 506 v.2 ¶ II.A. Lecompte admits he "wound down" his dry dock business "during 2011." BP therefore argues Policy 506 prevents him from making a general BEL claim and requires reclassification of the claim under the FBEL framework.

There are reasons to doubt BP's reading of Policy 506. Elsewhere, that policy clarifies the status of businesses that fail too early to qualify as a "Failed Business": "[A] claimant that reports that it failed on [rather than subsequent to] May 1, 2010 . . . does not meet the definition of a Failed Business . . . under the Failed Business Framework *and would be treated as a General BEL claimant . . . .*" Policy 506 v.2 ¶ II.B.a (emphasis added). Taking this context

4

into account, it seems even Policy 506 contemplates applying the general BEL framework to a business that failed on or before May 1, 2010—like Lecompte's dry dock.

Moreover, Policy 506 appears to say the BEL framework is the generally applicable one—unless the claim falls in one of the exceptions. *See* Policy 506 v.2 ¶ II.A. A "failed business" is one exception, so the BEL framework "does not apply to . . . failed businesses." Settlement Agreement Ex. 4C at 1 n.1. But as the Claims Administrator found (and we affirmed above), Lecompte's dry dock is not a "failed business" because it failed *before* May 1, 2010, not after. *See* Settlement Agreement § 38.68 ("Failed Business shall mean a business [that failed] subsequent to May 1, 2010 . . . ."). Because the exception for failed businesses does not apply to the dry dock, the Settlement Agreement and Policy 506 suggest the generally applicable BEL framework does.

We have said the district court abuses its discretion if it fails to review "a contradiction or misapplication of the Settlement Agreement." *See Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167, 169 (5th Cir. 2017) (per curiam). The district court may someday be duty bound to address the meaning and validity of Policy 506. But today is not that day. Lecompte neither raises this issue nor points to evidence he would have been able to recover under the general BEL framework.

An appellant's brief must provide "citations to the authorities and parts of the record on which the appellant relies," FED. R. APP. P. 28(a)(8), and Lecompte's brief falls far short of that standard. He cites only a single case, and he cites it for the proposition that we have appellate jurisdiction. *See In re Deepwater Horizon*, 785 F.3d 986 (5th Cir. 2015). More importantly, he fails to address Policy 506 and BP's contention it prevents his claim from being considered under the general BEL framework.

No. 18-30643

Even if Lecompte had shown that BP or the Settlement Program misinterpreted or misapplied the Settlement Agreement, he has not shown he would be entitled to general BEL compensation in any event.  Lecompte says his dry dock business could have qualified for BEL compensation under the Settlement Agreement's "Decline-Only Revenue Pattern."  Lecompte mentions the first two requirements for "Decline-Only" causation: (1) a "Downturn"; and (2) "[s]pecific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011."  Settlement Agreement Ex. 4B ¶¶ II.C.1–2.  But there is a third requirement—the "Customer Mix Test."  *See id.* ¶ II.C.3; *Claimant ID 100261758 v. BP Expl. & Prod., Inc.*, No. 18-30173, 2019 WL 507588, at *2 (5th Cir. Feb. 8, 2019) (per curiam).  The claimant has the burden to submit documentation sufficient to satisfy this test.  *See Claimant ID 100261758*, 2019 WL 507588, at *3.  Lecompte does not mention the Customer Mix Test, argue he satisfied it, or point to any documentation in the record to support such a showing.  *See* FED. R. APP. P. 28(a)(8).  He has forfeited this argument.

Lecompte also suggests he could be entitled to compensation for spill-related contract cancellations.  The "spill-related cancellations" framework, however, "only establishes causation for the specific cancellations substantiated by the claimant" and requires evidence a "specific contract" was cancelled.  Settlement Agreement Ex. 4B ¶ II.D.  Lecompte argues contracts were cancelled due to the oil spill, but he points to no evidence supporting this claim.  He cites affidavits from about half a dozen onetime customers, but all they say is that the customer did not use the dry dock in 2010 due to the oil spill—not that a contract was in existence and then cancelled.  Moreover, even if customers had contracts and canceled them, Lecompte does not point to evidence showing how much revenue he lost as a result.  *See* FED. R. APP. P. 28(a)(8).  He has forfeited this argument as well.

6

No. 18-30643

\*      \*      \*

The district court's judgment is AFFIRMED.